# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

ASSOCIATED WHOLESALE
GROCERS, INC.,

        Plaintiff,

v.

KOCH FOODS, INC., et al.,

        Defendants.

Case No. 18-2258-DDC-KGG

## MEMORANDUM AND ORDER

On May 16, 2018, plaintiff Associated Wholesale Grocers, Inc. filed a Complaint against 17 sets of defendants. All but one of the defendants are producers of broiler chickens—chickens raised for consumption—who sell broiler chickens in the United States. The Complaint asserts that defendants and their co-conspirators, beginning in 2008, engaged in a nationwide conspiracy to increase the price of broiler chickens, thus violating Section 1 of the Sherman Antitrust Act and various state antitrust laws. Plaintiff alleges that it has purchased about two billion dollars' worth of broiler chickens since 2008. And it seeks to recover the alleged overcharges it claims it has paid because of defendants' illegal conspiracy to raise the price of broiler chickens.

All but one of the defendants has filed a Joint Motion to Transfer. Doc. 32. This motion asks the court to transfer the case to the United States District Court for the Northern District of Illinois under 28 U.S.C. § 1404(a) because some 20 related cases currently are pending in that district. Plaintiff has filed an Opposition to the Motion. Doc. 55. And defendants have submitted a Reply. Doc. 56. After considering the parties' arguments, the court grants the Joint

Motion to Transfer and transfers this case to the Northern District of Illinois. The court explains why it has decided to grant defendants' request, below.

I.   **Factual Background**

Plaintiff is the "nation's largest cooperative food wholesaler to independently owned supermarkets." Doc. 1 at 6 (Compl. ¶ 2). It serves more than "3,800 locations in more than half of the states in the United States." *Id.* at 13 (Compl. ¶ 19). And it has purchased "enormous quantities of [broiler chickens] for resale to those supermarkets." *Id.* at 6 (Compl. ¶ 2).

Plaintiff's Complaint alleges that defendants and their co-conspirators, beginning as early as January 1, 2008, conspired to increase the price of broiler chickens by reducing production and manipulating an industry price index for broiler chickens known as the Georgia Dock. Based on these allegations, plaintiff asserts three claims against defendants: (1) violation of the Sherman Act § 1, 15 U.S.C. § 1; (2) violation of the Wisconsin Antitrust Act, Wis. Stat. Ann. § 133.03.; and (3) violation of the Tennessee Trade Practices Act, Tenn. Code Ann. § 47-25-101. As a direct purchaser of broiler chickens, plaintiff seeks damages under these federal and state statutes as well as injunctive relief.

Plaintiff's Complaint is factually similar to the Complaints filed in some 20 actions filed in the Northern District of Illinois. *In re Broiler Chicken Antitrust Litig.*, No. 1:16-cv-8637 (N.D. Ill.) ("the *Broiler Litigation*"). The *Broiler Litigation* encompasses four types of cases: (1) a consolidated putative class action on behalf of Direct Purchaser Plaintiffs; (2) a consolidated putative class action on behalf of Indirect Purchaser Plaintiffs; (3) a consolidated class action complaint on behalf of End-User Plaintiffs; and (4) individual actions filed by direct purchasers based on the same allegations in the putative class action but seeking recovery on a

non-class basis. The Northern District of Illinois has assigned all twenty cases in the *Broiler Litigation* to the Honorable Thomas M. Durkin.

Like plaintiff's allegations here, plaintiffs in the *Broiler Litigation* assert that defendants[1] violated federal and state antitrust laws[2] by conspiring to fix, raise, maintain, and stabilize the price of broiler chickens beginning at least as early as January 2008. *See* Doc. 33-13 (Direct Purchaser Plaintiffs' Third Amended and Consolidated Class Action Complaint), 33-14 (Commercial and Institutional Indirect Purchaser Plaintiffs' Fourth Amended Consolidated Class Action Complaint), 33-15 (End-User Consumer Plaintiffs' Second Consolidated Amended Class Action Complaint). Specifically, the Direct Purchaser Plaintiffs in the *Broiler Litigation* allege that defendants "implemented and executed their conspiracy [to fix prices] by coordinating their output and limiting production . . . ." Doc. 33-13 at 6 (Direct Purchaser Pls.' Third Am. and Consolidated Class Action Compl. ¶ 1). Also, they allege that "certain Defendants and their co-conspirators apparently manipulated and artificially inflated a widely used Broiler price index, the Georgia Dock." *Id.*

The *Broiler Litigation* plaintiffs allege that defendants' illegal conspiracy increased prices for broiler chickens. And, the *Broiler Litigation* plaintiffs contend, defendants' conduct injured them because it caused them to pay overcharges when purchasing broiler chickens. Like plaintiff here, the *Broiler Litigation* plaintiffs seek damages and injunctive relief under Sherman Act § 1.

---

[1] All defendants named in this case also are named as defendants in the *Broiler Litigation*.

[2] Like plaintiff here, the Indirect Purchaser plaintiffs assert violations of the Tennessee Trade Practices Act, Tenn. Code Ann. § 47-25-101, and the Wisconsin Antitrust Act, Wis. Stat. Ann. § 133.03. Doc. 33-14 at 175–76, 178–79 (Fourth Am. Consolidated Class Action Compl. ¶¶ 585–92, 604–12).

## II. Legal Standard

Defendants ask the court to transfer the case to the Northern District of Illinois under 28 U.S.C. § 1404(a). This statute provides: "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a).

The district court has broad discretion under § 1404(a) to adjudicate motions to transfer based upon a case-by-case review of convenience and fairness. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991). "The party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient." *Id.* at 1515 (citations omitted). "'Merely shifting the inconvenience from one side to the other, however, obviously is not a permissible justification for a change of venue.'" *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) (quoting *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992)).

The Tenth Circuit has specified the factors that a district court must consider when deciding whether to transfer an action under 28 U.S.C. § 1404(a). They are:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit Corp.*, 928 F.2d at 1516 (citing *Tex. Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967)); *see also Bartile Roofs, Inc.*, 618 F.3d at 1167 (citations omitted).

### III. Analysis

Defendants assert that the court should transfer this case to the Northern District of Illinois, where the *Broiler Litigation* is pending, because transfer would conserve judicial resources and provide a more convenient forum for the parties and witnesses in this case. Plaintiff does not dispute that this case is substantially similar to the 20 cases pending in the *Broiler Litigation*. Indeed, plaintiff concedes that coordinating this case with the *Broiler Litigation* will produce certain efficiencies. But, plaintiff contends, the court need not transfer the case to the Northern District of Illinois to achieve those efficiencies. Instead, it argues, the court can achieve efficiencies simply by coordinating discovery between this case and the *Broiler Litigation*—and do so without transferring the case and depriving plaintiff of its chosen forum for trial.

First, plaintiff suggests that the court could employ a transfer similar to the one used under the Multi-District Litigation ("MDL") statute, 28 U.S.C. § 1407. Plaintiff asks the court to transfer the case to the Northern District of Illinois for pretrial proceedings and asserts that the case then could return to the District of Kansas for trial. But the MDL statute applies only to cases that the Judicial Panel on Multidistrict Litigation ("JPML") consolidates and transfers to a single district for coordinated pretrial proceedings. *See* § 1407(a) ("Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions."). The *Broiler Litigation* is not an MDL. The court cannot apply § 1407 here.

Next, plaintiff provides two examples of cases where our court has ordered coordinated discovery with cases in other districts. But, as explained below, neither of these cases shares any

similarities with plaintiff's case and the *Broiler Litigation*. Based on the present posture of the cases, the court cannot find a practical way to apply a coordinated discovery plan here when the *Broiler Litigation* already is underway and its individual cases are in various stages of discovery.

Plaintiff first cites a Master Discovery Protocol Order that Judge Lungstrum entered in *National Credit Union Administration Board v. RBS Securities, Inc.*, No. 11-2340-JWL (D. Kan. Apr. 10, 2014), ECF 314. In that case, Judge Lungstrum coordinated discovery with other cases pending in the Southern District of New York and the Central District of California. After the JPML denied the defendants' request to consolidate the cases, the defendants "submitted a letter to the three district courts overseeing [the] cases in Kansas, California, and New York and stated that they would agree to the entry of some form of master discovery protocol to apply in all of the related litigation in all three districts." Doc. 55-3 at 3. Plaintiff also "agreed that coordination of its actions would create efficiencies" and even "submitted a specific proposal on coordination" to the three courts. *Id.* Collectively, the three courts entered a Master Discovery Order on April 10, 2014; it governed coordinated discovery for the four actions pending in our court, the seven actions pending in the Southern District of New York, and the two actions pending in the Central District of California. *See* Doc. 55-2. The Master Discovery Order recognized that "discovery orders have been entered in some of the Actions but discovery *remains in its initial stages*." *Id.* at 4 (emphasis added). Also, the Order appointed Judge Denise Cote of the Southern District of New York to decide discovery disputes after consulting with Judge Lungstrum and Judge George H. Wu (the judge assigned to the Central District of California cases).

In contrast, here, plaintiff is the only party who agrees with coordinating this case in Kansas with the *Broiler Litigation*. Defendants oppose plaintiff's proposal, arguing that it will

6

waste significant party and judicial resources and impose an undue burden on the *Broiler Litigation* court. Defendants represent that the *Broiler Litigation* already is one year into discovery. And, they explain, the *Broiler Litigation* court has entered five scheduling orders, held several conferences on discovery protocol, and has resolved some discovery disputes. Plaintiff never disputes defendants' characterizations. So, unlike the *National Credit Union Administration Board* cases, the *Broiler Litigation* is not "in its initial stages." Doc. 55-2 at 4.

Also, applying a protocol like the one in *National Credit Union Administration Board*'s Master Discovery Protocol Order could slow the progress of some cases pending in the Northern District of Illinois. Asking Judge Durkin to confer with this court before ruling issues that affect the many cases pending in his court—but only the one case pending in our court—is not an efficient use of judicial resources. Also, the court doesn't know whether the many plaintiffs in the *Broiler Litigation* will object to plaintiff's proposed coordinated discovery plan, especially if such an order could impede the cases' progress. As defendants suggest, it likely would take several weeks or months for the *Broiler Litigation* court to hear argument and issue an order coordinating discovery between the 20 or so cases pending in that court and the single case pending here. Plaintiff's proposal here would not promote judicial economy. And the court does not find it practical to implement a coordinated discovery plan like the one used in *National Credit Union Administration Board*.

Plaintiff next relies on Judge Lungstrum's efforts to coordinate discovery in an MDL proceeding with a group of related state court cases. *See* Doc. 55 at 3 (discussing *In re Syngenta AG MIR 162 Corn Litigation*). That MDL proceeding once involved more than 300 cases pending in our court. Doc. 55-4 at 1. Judge Lungstrum recognized that thousands of state court actions pending in Minnesota and Louisiana were related to the MDL cases. *Id.* at 2. So, he

entered a Coordination Order inviting any of the related state court cases to join in coordinated discovery and pretrial proceedings in the MDL so as "[t]o achieve the full benefits of the [MDL] proceeding." *Id.* at 3. Thus, the Coordination Order made participation optional. *See id.* at 19 ("As set forth above, any Court before which a Related Action is pending *may join* this Order, thereby authorizing the parties to that Related Action to participate in coordinated discovery consistent with and to the extent authorized by this Order, or alternatively all parties to a Related Action *may agree* among themselves to abide by the terms of this Order." (emphasis added)). Also, the Order required the parties to the Coordination Order to present discovery disputes to the MDL court in the first instance for resolution. *Id.* at 18.

The court cannot enter an order like Judge Lungstrum's Coordination Order because the procedural postures of the cases are completely different. The *Broiler Litigation* is not an MDL. Also, the Northern District of Illinois has not invited related actions pending in other jurisdictions to join in coordinated discovery with the *Broiler Litigation*. And, for reasons already discussed, a coordination discovery plan with the *Broiler Litigation* will not promote judicial economy when the 20 or so cases pending in the Illinois court occupy different stages of the pretrial proceedings.

In sum, plaintiff's proposals for coordinating discovery with the *Broiler Litigation* are not practical ones. And they would not produce the same efficiencies that the court could achieve by transferring the case in its entirety—as the court discusses in more detail, below. To the contrary, plaintiff's proposals likely will produce inefficiencies, waste judicial resources, and burden the court presiding over the *Broiler Litigation.*

The court now turns to consider 28 U.S.C. § 1404(a). Specifically, is transfer warranted under the factors that govern that provision? As already discussed, § 1404(a) provides that "[f]or

8

the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). As defendants explain, this statute imposes two requirements: (1) the transferee court is one where the plaintiff could have filed suit originally, and (2) the convenience of the parties and witnesses and the interest of justice favor transfer.

Defendants assert that the first requirement is satisfied. They contend that plaintiff originally could have filed its case in the Northern District of Illinois because plaintiff conducts business in Chicago and some 20 other cases asserting similar allegations already are pending in that court. Defendants explain that the Northern District of Illinois has subject matter jurisdiction over the causes of action and personal jurisdiction over defendants. Also, defendants assert, venue is proper in the Illinois district. Plaintiff never refutes these arguments. The court thus concludes that defendants have shouldered their burden to establish that plaintiff could have brought this action in the Northern District of Illinois.

Defendants next argue that the second requirement favors transfer. Plaintiff disagrees, arguing that transfer will serve neither the convenience of the parties or witnesses nor promote the interests of justice. To support their arguments, the parties rely on the factors that the Circuit directs district courts to consider when deciding whether transfer is warranted under 28 U.S.C. § 1404(a). The court considers those factors in the four subsections, below. As they explain, these factors favor § 1404 transfer to the Northern District of Illinois.

### A. Plaintiff's Choice of Forum

First, plaintiff asserts that the court should not disturb plaintiff's chosen forum. Plaintiff argues that our court gives "great weight" to the forum where a plaintiff chooses to file its lawsuit. *Pehr v. Sunbeam Plastics Corp.*, 874 F. Supp. 317, 321 (D. Kan. 1995) (citing *Allstate*

*Ins. Co. v. Emp'rs Reinsurance Corp.*, 715 F. Supp. 1502, 1503 (D. Kan. 1989)). And thus, plaintiff contends, this factor weighs heavily against transfer.

The court agrees that our court "normally give[s] great weight to a plaintiff's choice of forum." *Schecher v. Purdue Pharma L.P.*, 317 F. Supp. 2d 1253, 1263 (D. Kan. 2004) (citing *KCJ Corp. v. Kinetic Concepts, Inc.*, 18 F. Supp. 2d 1212, 1214 (D. Kan. 1998)). But "when the facts giving rise to a lawsuit have no material relation or significant connection to plaintiff's chosen forum, plaintiff's choice of forum is given reduced weight on motion to transfer." *Id.* (citing *Cook v. Atchison, Topeka & Santa Fe Ry. Co.*, 816 F. Supp. 667, 669 (D. Kan. 1993)); *see also Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) ("Courts . . . accord little weight to a plaintiff's choice of forum 'where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum.'" (quoting *Cook*, 816 F. Supp. at 669)).

Plaintiff asserts that a material and significant connection exists between the facts of the case and plaintiff's chosen forum because plaintiff's headquarters are located in Kansas City, Kansas. Also, plaintiff argues, the parties negotiated all of the master contracts for the purchase of broiler chickens in Kansas City, Kansas, and plaintiff made all of the payments—including alleged illegal overpayments—in Kansas City, Kansas. So, plaintiff contends, it sustained all of its damages in Kansas City, Kansas. Also, plaintiff asserts that its witnesses—persons involved in the negotiations leading to its purchase of broiler chickens—are located in the Kansas City, Kansas, area.

But plaintiff's Complaint never alleges that any of defendants' unlawful conduct occurred in Kansas. Instead, the Complaint alleges that defendants conspired and colluded at trade association meetings, investor conferences, and defendants' broiler chicken plants. Doc. 1

10

at 122–29 (Compl. ¶¶ 356–78). As defendants correctly assert, other courts have held that the locus of operative facts in an antitrust action is where the defendants allegedly conspired or colluded to violate the antitrust laws. *See, e.g.*, *Chicken Kitchen USA, LLC v. Tyson Foods*, No. 17-21503-CIV, 2017 WL 6760811, at *4 (S.D. Fla. Oct. 4, 2017) ("[T]he 'locus of operative facts is the initially chosen forum if acts of . . . unfair competition occurred in that forum.'" (quoting *CYI, Inc. v. Ja-Ru, Inc.*, 913 F. Supp. 2d 16, 19 (S.D.N.Y. 2012))); *see also Fox News Network, LLC v. Time Warner, Inc.*, No. 96-CV-4963, 1997 WL 271723, at *3 (E.D.N.Y. May 16, 1997) (transferring an antitrust case to the Southern District of New York because, among other things, "[t]he locus of the operative facts in this case is primarily in Manhattan, where Manhattan-based Time Warner acquired Turner Broadcasting, as well as where the defendants allegedly conspired to prevent Fox News from entering cable markets generally and the Manhattan market specifically."); *cf. Mortg. Research Ctr., LLC v. Flagship Fin. Grp., LLC*, No. 16-2253-JAR-GEB, 2016 WL 7229259, at *4 (D. Kan. Dec. 14, 2016) (holding that false advertising and unfair competition claims lacked a material and substantial connection to Kansas when plaintiff alleged that the unlawful conduct occurred in Utah, and Kansas was "not the locus of operative facts simply because there have been sales in that district, along with other districts" (citing *CYI, Inc.*, 913 F. Supp. 2d at 21)).

Recently, the Southern District of Florida invoked § 1404 to transfer *Chicken Kitchen USA* to the Northern District of Illinois because the related *Broiler Litigation* is pending there. 2017 WL 6760811, at *5. Like plaintiff in this case, the *Chicken Kitchen USA* plaintiff asserted Sherman Act violations and state law claims against producers of broiler chickens. *Id.* at *1. Plaintiff alleged that defendants had "conspired with unnamed others to fix the price of broilers . . . by secretly and illegally sharing information and then using that information to coordinate

11

output and manipulate relevant price indices." *Id.* Plaintiff asserted that defendants' conduct caused the price of broiler chickens to rise artificially, injuring plaintiff, who had purchased broiler chickens in Florida. *Id.*

The Southern District of Florida held that judicial efficiency and the interest of justice warranted transfer of its case to the Northern District of Illinois. *Id.* at *4. It reached this conclusion because the *Broiler Litigation* court is considering the same causes of action and theories of liability that plaintiff asserted in *Chicken Kitchen USA*. *Id.* Also, the court concluded that "refusing transfer here would needlessly duplicate judicial resources and result in simultaneous litigation on the same issues, contravening the policies underlying § 1404(a) and risking inconsistent judgments." *Id.* The court held that these considerations outweighed plaintiff's chosen forum because the operative facts had not occurred in the Southern District of Florida. *Id.* The court recognized that "[t]he only connection to this District alleged in the Complaint is that Chicken Kitchen is a Florida citizen" and "[t]he Complaint does not allege the location of any [defendant] conduct giving rise to liability." *Id.* While plaintiff argued that it had sustained injury in Florida—where it purchased broiler chickens—the court held that transfer still was appropriate because none "of the events allegedly giving rise to liability occurred in this District." *Id.*

Likewise here, plaintiff's Complaint never alleges that any of the events giving rise to liability occurred in Kansas. Plaintiff alleges that defendants conspired and colluded at trade association meetings, investor conferences, and defendants' plants. But the Complaint never asserts that any of these meetings occurred in Kansas. To the contrary, the Complaint alleges explicitly that some of the meetings occurred in states other than Kansas. *See, e.g.*, Doc. 1 at 125 (Compl. ¶ 366) (describing an expo held in Atlanta, Georgia, attended by defendants and co-

12

conspirators' senior executives, mid-level executives, and other employees). The court thus finds that the facts giving rise to this lawsuit lack a material relation or significant connection to Kansas.³

Also, our court has afforded a plaintiff's choice of forum little deference when the plaintiff has expressed a "willingness to transfer at least part of the case to another forum." *Sheldon v. Khanal*, 605 F. Supp. 2d 1179, 1189 (D. Kan. 2008). Here, plaintiff has demonstrated its willingness to transfer part of the case to the Northern District of Illinois—*i.e.*, for coordinated discovery. *See* Doc. 55 at 2 (explaining that plaintiff agrees with transfer to the Northern District of Illinois for discovery so long as the case returns for trial).

For all these reasons, plaintiff's choice of forum does not favor transfer. Although our court often defers to plaintiff's chosen forum when considering a motion to transfer, two considerations give this factor little weight in this case. First, the facts giving rise to this lawsuit have no significant or even material connection to plaintiff's chosen forum. And second, plaintiff's willingness to transfer part of the case to the Northern District of Illinois entitles its choice of forum to little deference.

---

³ While plaintiff asserts injury in Kansas, the Complaint asserts no Kansas state law claims. Instead, the Complaint asserts a claim under the Wisconsin Antitrust Act based on plaintiff's purchase of broiler chickens "at and for its Kenosha, WI distribution center." *Id.* at 148 (Compl. ¶ 449). Plaintiff's Vice President of Meat and Seafood attests that the Kenosha, Wisconsin, facility served some Chicago retailers, but plaintiff's purchases were a limited and insubstantial part of its business. Doc. 55-5 at 2–3 (Bo Hawkins Aff. ¶ 6). Nevertheless, plaintiff asserts a Wisconsin Antitrust Act claim based on its purchases of broiler chickens at this facility serving Chicago retailers. Plaintiff also asserts a violation of the Tennessee Trade Practices Act based on its purchase of broiler chickens "at and for is distribution center in Goodlettsville, TN." Doc. 1 at 150 (Compl. ¶ 463). Thus, according to the Complaint, plaintiff's injuries are not confined to Kansas. And plaintiff incurred at least some of those injuries in Wisconsin and the Chicago area, where plaintiff served some of its retail members.

### B.     Interest of Justice

Defendants assert that the interest of justice strongly favors the case's transfer. The court agrees. Our court has held that "'[t]he pendency of related litigation in another forum is a proper factor to consider in resolving choice of venue questions.'" *Schecher v. Purdue Pharma L.P.*, 317 F. Supp. 2d 1253, 1263 (D. Kan. 2004) (quoting *Hill's Pet Prods. v. A.S.U., Inc.*, 808 F. Supp. 774, 777 (D. Kan. 1992)). That is so because "'[t]he simultaneous prosecution in two different courts of cases relating to the same parties and issues "leads to the wastefulness of time, energy and money."'" *Hill's Pet Prods.*, 808 F. Supp. at 777 (quoting *Cessna Aircraft Co. v. Brown*, 348 F.2d 689, 692 (10th Cir. 1965) (quoting *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960))).

Here, plaintiff never disputes that this case is closely related to the some 20 cases pending in the *Broiler Litigation*. Indeed, this case involves many of the same legal issues presented in the *Broiler Litigation*, and plaintiff here asserts the same theories of liability against the same defendants in the *Broiler Litigation*. Under similar circumstances, our court has ordered § 1404(a) transfer to the district where related litigation is pending. *See, e.g.*, *Pac. Oil & Gas, LLC v. Chesapeake Energy Corp.*, No. 16-2498-JAR, 2017 WL 1397538, at *7–8 (D. Kan. Apr. 18, 2017) (transferring a case "which almost exactly mirror[ed]" twelve consolidated suits pending in the Western District of Oklahoma because a transfer would "facilitate the interest of justice and avoid inconsistent results"); *Schecher*, 317 F. Supp. 2d at 1262 (finding that "this action raises legal and factual issues that are related to forty other actions pending in federal court" and concluding that "[b]ecause of the similarities in this action and other pending actions, transfer to the Southern District of New York is warranted to both facilitate the interest of justice and avoid inconsistent results. Indeed, were this Court not to transfer the case, two different federal district

courts would be simultaneously litigating claims involving virtually the same parties and the same issues, certainly not a desirable outcome from the standpoint of either judicial efficiency or convenience to the parties and witnesses" (citation and internal quotation marks omitted)); *Energy Intelligence Grp., Inc. v. Frontier El Dorado Refining LLC*, No. 15-1152-MLB, 2015 WL 5006999, at *3 (D. Kan. Aug. 20, 2015) (recognizing that "this case is more or less a carbon copy of the Texas suit" and that "the Texas suit was filed first and discovery has commenced in that action," thus concluding that "[g]iven the overlapping issues, it would be economical and efficient to resolve the two cases in a single district" because, among other things, "consolidated discovery might help reduce the costs of litigation"). For the same reasons, the court finds that transfer is warranted here.

Also, the court is persuaded by *Chicken Kitchen USA*'s well-reasoned opinion. Almost identical to plaintiff's asserted claims in this Kansas case, the *Chicken Kitchen USA* plaintiff asserted that defendant broiler chicken producers violated federal and state antitrust laws by conspiring to fix the prices of broiler chickens. *Chicken Kitchen USA, LLC v. Tyson Foods*, No. 17-21503-CIV, 2017 WL 6760811, at *1 (S.D. Fla. Oct. 4, 2017). Applying the § 1404(a) factors, the court found that judicial efficiency and the interest of justice "weigh[ed] heavily in favor of transfer." *Id.* at *3. It reached this conclusion because the *Broiler Litigation* court is considering the same causes of actions and same theories of liability that plaintiff was asserting in *Chicken Kitchen USA*. *Id.* And, the court observed, "refusing transfer here would needlessly duplicate judicial resources and result in simultaneous litigation on the same issues, contravening the policies underlying § 1404(a) and risking inconsistent judgments." *Id.* at *4.

Likewise here, the interests of justice strongly favor transferring this case to the Northern District of Illinois where related litigation is pending. A transfer will avoid duplicity and

15

promote consistent application of the law. Indeed, as defendants explain, the *Broiler Litigation* court already has decided many legal issues, including discovery disputes, in the two years that it has presided over the cases. The *Broiler Litigation* is assigned to both a district judge and a magistrate judge, and the court has appointed a special master to coordinate discovery. Defendants assert that these individuals already have a strong grasp of the factual and legal issues that the parties likely will relitigate in this case. And, defendants contend, it will promote the interest of justice to have the *Broiler Litigation* court rule on future discovery disputes and the merits of plaintiff's claims. Transferring this case will avoid the possibility of inconsistent rulings on these issues. Also, transfer will promote judicial efficiency by presenting the same issues to one court for decision instead of proceeding with simultaneous litigation of the same issues in different courts. For all these reasons, the interests of justice strongly favor transfer.

      **C.**     **Convenience of Witnesses**

Defendants also assert that the convenience of witnesses and parties favors transfer of the case to the Northern District of Illinois. The Tenth Circuit has described the convenience of witnesses as "the most important factor in deciding a motion under § 1404(a)." *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1169 (10th Cir. 2010) (citations omitted). A party seeking transfer must establish inconvenience by "(1) identify[ing] the witnesses and their locations; (2) indicat[ing] the quality or materiality of the[ir] testimony; and (3) show[ing] that any such witnesses were unwilling to come to trial . . . [,] that deposition testimony would be unsatisfactory[,] or that the use of compulsory process would be necessary." *Id.* (citations and internal quotation marks omitted).

Here, defendants assert that the key issue that plaintiff must prove at trial is the existence of a conspiracy between defendants and alleged co-conspirators. The witnesses who will testify

16

about this key issue likely are defendants' current or former employees. Defendants are located across the county. None are in Kansas. Defendants assert that the *Broiler Litigation* will require these key witnesses to travel to Northern District of Illinois to provide testimony. And, defendants contend, it is inconvenient to require them to travel to a second district to provide the same testimony in Kansas.

Plaintiff responds that a transfer here merely would shift the burden of inconvenience from the bottom of the caption to the top. And our court has held that transfer is not appropriate in these circumstances. *See KCJ Corp. v. Kinetic Concepts, Inc.*, 18 F. Supp. 2d 1212, 1214 (D. Kan. 1998) ("[N]or will the Court order transfer if the result is merely to shift the inconvenience from one party to the other."). Plaintiff asserts that Kansas is a far more convenient forum for plaintiff and its witnesses than the Northern District of Illinois. Plaintiff's headquarters are in Kansas, and the buyers who negotiated the contracts to purchase broiler chickens are located in the Kansas City, Kansas, area. But, as defendants argue, plaintiff's witnesses are likely to provide just a few hours of testimony. The cost for plaintiff's witnesses to travel to Chicago to provide that testimony is insignificant compared to the costs that defendant, alleged co-conspirators, and other non-party witnesses will incur to travel to Kansas to provide the same testimony that they are likely to provide in Chicago.[4]

Also, plaintiff asserts that three "potentially important witnesses" are subject to the court's subpoena power in Kansas but not in the Northern District of Illinois. Doc. 55 at 9. But defendants contend that an even larger number of non-party defense witnesses in the *Broiler*

---

[4] Defendants also assert that transfer would not inconvenience plaintiff's counsel because its counsel's law firm maintains an office in Chicago with more than 100 lawyers. The court does not find this argument especially helpful. Nothing suggests that any of these 100 attorneys have worked on this case. And while those who have worked on plaintiff's case might be able to work from the Chicago office, that convenience is too minor to deserve significant value.

*Litigation* are subject to the court's subpoena power in the Northern District of Illinois but not in Kansas. Defendants assert that, in the *Broiler Litigation*, the parties have negotiated 67 non-party document custodians and subpoenaed 135 third-party witnesses. Of those potential non-party defense witnesses, only 16 likely fall within our court's subpoena power. In contrast, about 30 of these potential non-party defense witnesses fall within the Northern District of Illinois's subpoena power. Also, the Complaint asserts that four defendants and seven alleged co-conspirators are headquartered in Illinois. But no defendant or any alleged co-conspirator is located in Kansas.

Considering all these facts, the court finds that the convenience of witnesses and parties weighs in favor of transfer, albeit just slightly.

### D. Difficulties that May Arise from Congested Dockets

Plaintiff asserts that the Northern District of Illinois's docket is far more congested than the one in our court. Thus, plaintiff contends, a transfer will delay trial of plaintiff's case. The Tenth Circuit has instructed: "When evaluating the administrative difficulties of court congestion, the most relevant statistics are the median time from filing to disposition, median time from filing to trial, pending cases per judge, and average weighted filings per judge." *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1169 (10th Cir. 2010) (citations omitted). Plaintiff has provided metrics comparing the median time from filing to disposition, the median time from filing to trial, pending cases per judge, and the average weighted filings per judge for the District of Kansas and the Northern District of Illinois. These statistics show that the median time from filing to disposition and the median time from filing to trial are more than double in the Northern District of Illinois than in the District of Kansas. Also, the pending

cases per judge and average weighted filings per judge is greater in the Northern District of Illinois than in the District of Kansas.

Plaintiff also provides several scheduling orders from the *Broiler Litigation* cases. Plaintiff asserts that they demonstrate two things: (1) "the court is moving expeditiously with fact discovery and intends to complete it by June 13, 2019," and (2) "upon completion of fact discovery the case will enter nine months of class action proceedings that have no bearing on [plaintiff's] case." Doc. 55 at 13. But, as defendants explain, the provisions in these scheduling orders governing class action proceedings will not apply to plaintiff's case because it has opted out of the class actions pending in the *Broiler Litigation.* Thus, defendants argue, plaintiff's concerns about delay are speculative.

At the same time, plaintiff concedes that discovery is moving "expeditiously" in the Northern District of Illinois. And, as defendants highlight, one of the Illinois scheduling orders demonstrates the efficiencies gained by transferring this case to the Northern District of Illinois. Scheduling Order No. 3 requires "One of the Direct Action Plaintiffs [to] provide counsel for any newly filed direct action plaintiffs with copies of all third party and Defendant productions, as well as discovery requests and responses from any party." Doc. 55-10 at 4 (Scheduling Order ¶ 12). Defendants explain that the deadline for defendants' substantial completion of document production recently expired in the *Broiler Litigation.* So, defendants contend, if the court transfers this case to the Northern District of Illinois, the court's Scheduling Order will allow plaintiff to receive substantially completed document productions almost immediately, without serving any requests for discovery and before any motion practice on the pleadings.

Considering all of these arguments, the court finds that the metrics comparing the two courts' dockets—standing alone—weigh against transfer. But this factor does not outweigh the

19

interests of justice transferring this case will advance, especially because the transfer recipient has some 20 related cases already pending in the *Broiler Litigation* and coordinated discovery already is proceeding "expeditiously" there.

After considering all the factors used to determine whether to transfer an action under 28 U.S.C. § 1404, the court, in its discretion, concludes that defendants have met their burden to show that the factors strongly favor transfer. Transfer will serve the convenience of the parties and witnesses and promote the interest of justice. The court thus transfers this case to the Northern District of Illinois.

**IV. Conclusion**

For reasons explained, the court grants defendants' Joint Motion to Transfer. The court transfers this case to the Northern District of Illinois.

**IT IS THEREFORE ORDERED THAT** defendants' Joint Motion to Transfer (Doc. 32) is granted. The court transfers this case to the United States District Court for the Northern District of Illinois. The court directs the Clerk of the Court to take all necessary steps to effectuate this transfer.

**IT IS SO ORDERED.**

**Dated this 13th day of September, 2018, at Kansas City, Kansas.**

                                                **s/ Daniel D. Crabtree**
                                                **Daniel D. Crabtree**
                                                **United States District Judge**